UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EXECUTIVE TRANSPORTATION                                         PLAINTIFFS
SYSTEM, LLC, et al.

v.                                                               CIVIL ACTION NO. 3:06-CV-143-S

LOUISVILLE REGIONAL AIRPORT                                      DEFENDANTS
AUTHORITY, et al.

### MEMORANDUM OPINION

This matter is before the court upon the motions of the defendants, the Louisville Regional Airport Authority ("LRAA") and the Louisville/Jefferson County Metro Government ("Louisville Metro") (collectively "Defendants"), to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6).[1] Defendants argue that the plaintiff's First Amended Complaint fails to state claims upon which relief can be granted.

### BACKGROUND

The plaintiffs in this matter include Executive Transportation System, LLC, James H. Simpson, and Janet L. Simpson. Formed in 1999, Executive provides ground transportation services to individuals and businesses, including transportation to and from the Louisville International Airport. James H. Simpson and Janet L. Simpson are African-Americans who own property interests

---

[1] Although LRAA seeks to introduce matters outside the pleadings, i.e., factual findings from LRAA's administrative proceedings involving Plaintiffs, the court cannot consider these findings without converting LRAA's motion into one for summary judgment, as the matters are not referenced in Plaintiffs' First Amended Complaint. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) (where the Sixth Circuit acknowledged that the life insurance polices that were attached to the defendant's motion to dismiss could be reviewed without converting the motion into one for summary judgment because the life insurance policies were "referred throughout the complaint," and "the policies [were] central to the [plaintiff's] claims." *Id.* at 514). The court also declines to convert this Motion into one for summary judgment given that discovery has yet to commence in this case. Were we to convert the Motion, the court would rightly be faced with a Rule 56(f) motion for an extension of time. To avoid this needless motion practice, the court simply advises LRAA to refile its motion as one for summary judgment upon commencement of discovery.

in Executive. The defendants in this matter include LRAA, Louisville Metro, and Bill Nighbert, in his official capacity as Secretary of the Commonwealth of Kentucky Transportation Cabinet.

Plaintiffs contend that Defendants seek to license their interstate and intrastate prearranged transportation and charter bus services, even though federal law expressly preempts states and their subdivisions from regulating such services. Plaintiffs bring claims for statutory preemption under 49 U.S.C. § 14501, violation of the Commerce Clause and Supremacy Clause of the U.S. Constitution, *ultra vires* acts, deprivation of rights under Section 2 of the Kentucky Constitution, deprivation of rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and deprivation of rights secured by 42 U.S.C. § 1981.

## ANALYSIS

When faced with a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the court must take the allegations of the complaint as true and grant dismissal only when the plaintiff's complaint fails to contain facts sufficient to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Weisbarth v. Geauga Park Dist.,* No, 06-4189, 2007 WL 2403659, *3 (Aug. 24, 2007). Here, Defendants argue that Plaintiffs fail to state any plausible claims under 49 U.S.C. § 14501, the U.S. Constitution, or state law. The court agrees in part and disagrees in part and addresses below the propriety of each claim Plaintiffs make.

### I. 49 U.S.C. § 14501

Plaintiffs bring their claims specifically under 49 U.S.C. § 14501(a)(1)(A), 49 U.S.C. § 14501(a)(1)(C), and 49 U.S.C. § 14501(d)(1). Under § 14501(a)(1), states and their political subdivisions are prohibited from enacting or enforcing "any law, rule regulation, standard, or other provision having the force and effect of law relating to--

> (A) scheduling of interstate or intrastate transportation (including discontinuance or reduction in the level of service) provided by a motor carrier of passengers subject to jurisdiction under subchapter I of chapter 135 of this title on an interstate route;

> (C) the authority to provide intrastate or interstate charter bus transportation.

*Id.* However, these prohibitions "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." 49 U.S.C. § 14501(a)(2).

In addition, under § 14501(d)(1), states and their political subdivisions are prohibited from enacting or enforcing "any law, rule, regulation, standard or other provision having the force and effect of law requiring a license on account of the fact that a motor vehicle is providing pre-arranged ground transportation service if the motor carrier providing such service--

> (A) meets all applicable registration requirements under chapter 139 for the interstate transportation of passengers;
>
> (B) meets all applicable vehicle and intrastate passenger licencing requirements of the State or States in which the motor carrier is domiciled or registered to do business; and
>
> (C) is providing such service pursuant to a contract for --
>
>> (i) transportation by the motor carrier from one State, including intermediate stops, to a destination in another state; or
>>
>> (ii) transportation by the motor carrier from one State, including intermediate stops in another State, to a destination in the original state.

49 U.S.C. § 14501(d)(1)(A)-(C)

Plaintiffs allege that in spite of these prohibitions, Defendant LRAA requires through its regulations: (a) a license or permit to provide intrastate bus charter service, (b) a license, permit, schedule, and concession to provide airport shuttle services, even if those services are prearranged and interstate, (c) a license or permit and schedule to provide intrastate common carrier bus services, (d) a license or permit and schedule to provide interstate common carrier bus services, and (e) an intrastate limousine license, even for duly licensed interstate limousines performing valid interstate transfers. LRAA Reg. Chp. 700, *et seq.*

Plaintiffs further allege that Defendant Louisville Metro requires through its ordinances: (a) a license or permit to provide intrastate charter bus services, (b) a license or permit and schedule to provide airport shuttle services, even if those services are prearranged and interstate, and (c) a license or permit to operate prearranged interstate limousine transportation. Ordinance No. 223, Series 2005 (amending and reenacting Louisville/Jefferson County Metro Code of Ordinances § 115.240, *et seq.*).

According to Plaintiffs, Defendants have sought to enforce these requirements against Executive by imposing citations with escalating fines and permanently barring Executive from providing charter bus and interstate and intrastate ground transportation services at the Louisville International Airport on the grounds that Executive had allegedly received an excessive number of LRAA citations.

Defendants do not deny that such regulations and ordinances exist; they do not deny their enforcement against Executive; and they do not deny the resulting sanctions imposed on Executive. Instead, LRAA insists that Plaintiffs fail to state a claim under § 14501. LRAA makes several arguments to advance its assertion.

First, LRAA argues that it has the authority to regulate the use of its facilities, including its ground use facilities, as provided for by Ky. Rev. Stat. §§ 183.133(3) & 183.885(1). Second, LRAA contends that its regulations are not within the scope of § 14501(a), because they are exempt under subsection (a)(2), as regulations pertaining to a state's safety regulatory authority. Third, LRAA asserts that even if § 14501(a) were to apply to its regulations, § 14501(a)(1)(A) is inapplicable to Executive, as Executive does not claim that its operations involve only interstate routes, and § 14501(a)(1)(A), by its terms, only applies to motor carriers "on an interstate route" and subject to 49 U.S.C. § 13501's jurisdictional reach by traveling between places in at least two states or traveling to a destination within the same state if the route passes through another state. Fourth, LRAA argues that § 14501(a)(1)(C) is not applicable to Executive, as Executive does not claim to

engage solely in charter bus operations. Fifth, LRAA claims that no cause of action exists under § 14501(d)(1), because the provision's three criteria have not been pled, and that even if the criteria have been pled, Executive is not being required to obtain a license or pay any fee on account of the fact that it is providing pre-arranged ground transportation service.

In addition to these arguments, Louisville Metro implies that because federal law fails to provide a definition for "charter bus", its ordinances fall outside preemption. Louisville Metro also asserts that because "prearranged ground transportation" is confined to motor vehicles "with a seating capacity not exceeding 15 passengers (including the driver)," and because Plaintiffs fail to allege that their vehicles have a seating capacity limited to fifteen passengers, Plaintiffs fail to state a claim under § 14501(d)(1). Furthermore, according to Louisville Metro, it is exempt under 49 U.S.C. §§ 13506(b)(1)(A) & (B), under which a city may impose any requirement on ground transportation vehicles providing transportation wholly within the city.

The court finds that Defendants' arguments either misinterpret the relevant provisions or are more appropriately reserved for summary judgment.

First, although Ky. Rev. Stat. §§ 183.133(3) & 183.885(1) provide LRAA with the authority to regulate ground transportation at the Louisville International Airport, that authority is subject to federal preemption. Here, Congress has preempted LRAA from regulating the scheduling of any interstate or intrastate passenger transportation services operating over interstate routes, from regulating charter bus transportation, and from regulating prearranged ground transportation if the motor vehicle meets the criteria of § 14501(d)(1)(A)-(C).

Second, the regulations and ordinances at issue in this matter do not fall within the safety regulatory power of Kentucky. The main purpose of these regulations and ordinances is to authorize transportation services, not for the protection of Kentucky's citizens. There must be a stronger showing than mere impact on safety in order to fall within the safety exception. *See Automobile Club of N.Y., Inc. v. Dykstra*, 423 F.Supp.2d 279, 285 (S.D.N.Y. 2006).

Third, a plaintiff need not be solely engaged in interstate transportation to make a claim under § 14501(a)(1)(A). Nothing in § 14501(a)(1)(A)'s language compels the conclusion Defendants assert. A plaintiff need only allege that he is engaged in interstate transportation in order to fall within the class of persons contemplated by § 14501(a)(1)(A). Plaintiffs make such an allegation.

Fourth, a plaintiff need not be solely engaged in charter bus operations to make a claim under § 14501(a)(1)(C). Again, nothing in subsection (C)'s language confines its applicability to motor carriers only engaged in charter bus operations. And again, a plaintiff need only allege that he provides charter bus services in order to fall within the class of persons contemplated by § 14501(a)(1)(C). Plaintiffs make such an allegation.

Fifth, Plaintiffs have pled the criteria for making a claim under § 14501(d)(1). Plaintiffs assert that Executive provides pre-arranged ground transportation services; that Executive is certified by the Federal Motor Carrier Safety Administration to provide interstate transportation; that Executive has met all of Kentucky's licensing requirements; and that Executive indeed provides interstate transportation.

Sixth, merely because Congress fails to define "charter bus" does not mean Defendants are free to enact whatever regulations or ordinances they wish with regard to charter bus operations. When Congress fails to define a specific term, a court may presume that Congress intended the term's ordinary meaning to attach. *Rusello v. United States*, 464 U.S. 16, 21, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). If no ordinary meaning can be found, the court can look to Kentucky law for a definition of charter bus. *See Alex's Transp., Inc. v. Colo. Public Utils. Comm'n*, 88 F.Supp.2d 1147, 1149 (D.Colo. 2000). In any event, for purposes of a Rule 12(b)(6) motion, it is sufficient for Plaintiffs to allege that they engage in charter bus operations and that Defendants seek to regulate their ability to provide such services. Upon a motion for summary judgment, the court can discern the scope of federal preemption with regard to Kentucky's charter bus operations and whether Plaintiffs' operations fall within that scope.

Seventh, Plaintiffs need not specifically allege that their vehicles have a seating capacity limited to fifteen passengers in order to make a claim under § 14501(d)(1). Unless Plaintiffs admit that their vehicles have a seating capacity greater than fifteen passengers, the capacity of their vehicles is a question of fact to be argued upon summary judgment, not in a motion to dismiss. It is sufficient for purposes of a Rule 12(b)(6) motion that Plaintiffs allege they meet the criteria of § 14501(d)(1)(A)-(C) and provide pre-arranged ground transportation services Defendants are purporting to regulate.

Finally, § 13506 deprives the Secretary and Board of Transportation jurisdiction only when the laws at issue concern "transportation provided entirely within a municipality . . . ." Plaintiffs do not allege that they provide transportation only within the Louisville/Jefferson County Metropolitan area. They specifically allege that Executive provides prearranged, interstate transportation services, transportation that would necessarily extend beyond Louisville, and that Defendants are attempting to regulate those services through their regulations and ordinances. Thus, the exemption contemplated by § 13506 is inapplicable.

Accordingly, the court finds Plaintiffs' claims under § 14501 properly before us.

## II. Commerce Clause

The dormant Commerce Clause prohibits states from enacting or enforcing laws that directly burden interstate commerce. *E. Ky. Res. v. Fiscal Court of Magoffin County, Ky.*, 127 F.3d 532, 540 (6th Cir. 1997). Plaintiffs argue that by purporting to regulate interstate charter bus service and by regulating the scheduling of a motor carrier of passengers on an interstate route, Defendants' regulations and ordinances have an impact on interstate commerce. Defendants, however, contend that "Plaintiffs make no allegation that the Authority [LRAA] has affirmatively discriminated against interstate transportation–at best, they allege that the Authority's regulations have an incidental effect on interstate commerce."

The court disagrees. Plaintiffs' allegations are sufficient to make a claim for violation of the Commerce Clause. Plaintiffs allege that Executive engages in interstate transportation and that Defendants by requiring licenses or permits to operate interstate transportation services burden interstate commerce. At this juncture, Plaintiffs need not allege to what extent interstate commerce is burdened. Plaintiffs need only allege how interstate commerce is burdened by the Defendants' actions. Plaintiffs sufficiently make this allegation.

### III. *Ultra Vires* Acts

Plaintiffs claim that in enacting and enforcing their regulations and ordinances, Defendants have exceeded their lawful power, and thus have engaged in *ultra vires* acts. Defendants argue that Plaintiffs' claims of *ultra vires* acts stem from their faulty premise that federal law preempts Defendants from acting in the manner they have. However, as discussed above, federal law *does* preempt Defendants from regulating the scheduling of any interstate or intrastate passenger transportation services operating over interstate routes, from regulating charter bus transportation, and from regulating prearranged ground transportation if the motor vehicle meets the criteria of § 14501(d)(1)(A)-(C). Yet, the regulations and ordinances enacted by Defendants purport to regulate what has been expressly preempted. Thus, Plaintiffs have sufficiently stated a cause of action for *ultra vires* acts.

### IV. Section 2 of the Kentucky Constitution

Section 2 of the Kentucky Constitution prohibits the exercise of arbitrary power. Ky. const. § 2; *American Beauty Homes Corp. v. Louisville & Jefferson County Planning & Zoning Comm'n.*, 379 S .W.2d 450 (Ky.1964). It provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Kentucky const. § 2.

LRAA asserts that because it gave Executive every opportunity to comply with its regulations and continuing operating at Louisville International Airport, it could not have acted

arbitrarily. Whether Executive acted arbitrarily is an issue to be determined upon summary judgment or at trial, not a motion to dismiss. For purposes of a motion to dismiss, Plaintiffs sufficiently state a claim under Section 2 of the Kentucky Constitution by alleging that due to federal preemption LRAA in enacting and enforcing the regulations at issue has exceeded its powers.

### IV. Equal Protection

Although Plaintiffs' First Amended Complaint alleges the constitutional basis for their claim of race discrimination, it fails to set forth the factual predicate for this claim. Plaintiffs only assert that "upon information and belief, LRAA has intentionally discriminated against ETS, and its African-American owners, because of the owners' race." This is merely a conclusory allegation unable to withstand a motion to dismiss. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.2005).

Plaintiffs, however, sufficiently plead the grounds upon which their claim for unequal treatment based on non-suspect classification rests. They assert the constitutional basis for their claim and allege that LRAA has imposed sanctions and fines on Executive and barred Executive from operating at the Louisville International Airport for Executive's alleged violations, while only investigating similarly-situated entities for similar regulatory violations. These allegations are sufficient to withstand a motion to dismiss.

### V. 42. U.S.C. §1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. A claim of race discrimination under § 1981 not only requires allegations sufficient to make out a *prima facie* case of discrimination, but also an allegation that the discrimination was intentional. *Bell v. Ohio State Univ.*, 351 F.3d. 240, 252-53 (6th Cir. 2003).

      As explained above, Plaintiffs' allegation of race discrimination is merely conclusory, as Plaintiffs do not set forth the grounds upon which that claim rests. If Plaintiffs have not set forth a case of race discrimination under the Equal Protection Clause, they certainly have not set forth one under § 1981. While from adequately pleaded grounds, the court might be able to infer that the alleged discrimination was intentional, Plaintiffs must at least plead the factual predicate for their claim of race discrimination. Plaintiffs have not done so here.

      Accordingly, the court will dismiss Plaintiffs' § 1981 claim, as well as their claim for race discrimination under the Equal Protection Clause. All other claims will remain.

      A separate order will be entered today in accordance with this opinion.