UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EXECUTIVE TRANSPORTATION                                    PLAINTIFFS
SYSTEM, LLC, et al.,

v.                                                          CASE NO. 3:06-CV-143-S

LOUISVILLE REGIONAL AIRPORT                                 DEFENDANTS
AUTHORITY, et al.

## MEMORANDUM OPINION

This matter is before the court upon the following related dispositive motions: Defendant Joe

Prather, in his official capacity as Secretary of the Commonwealth of Kentucky Transportation

Cabinet (successor to former Secretary Bill Nighbert) (the "Cabinet") has moved for summary

judgment (DN 104). Plaintiffs Executive Transportation System, LLC, James Simpson, and Janet

Simpson (hereinafter collectively, "ETS") have moved for partial judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) (DN 109). Defendant Louisville/Jefferson County Metro

Government ("Louisville Metro") has moved for partial judgment on the pleadings (DN 116).[1]

For the reasons that follow, the Cabinet's motion for summary judgment will be granted,

ETS's motion for partial judgment on the pleadings will be granted in part and denied in part, and

Louisville Metro's cross-motion will be granted.

BACKGROUND

ETS provides ground transportation services to individuals and businesses, including

---

[1]Louisville Metro has also moved to supplement its response to ETS's motion (DN 122). Defendant Louisville Regional Airport Authority (the "LRAA") has moved for leave to file a sur-reply to ETS's motion (DN 127). These motions will be granted by separate order, and Louisville Metro's supplemental response and the LRAA's sur-reply will be deemed filed.

transportation to and from the Louisville International Airport (the "Airport").  ETS alleges that the Cabinet, Louisville Metro, and the LRAA (hereinafter collectively, "Defendants") have enacted and are enforcing laws and regulations requiring the licensing and permitting of intrastate or interstate charter bus and pre-arranged interstate ground transportation services, even though federal law expressly preempts states and their subdivisions from regulating such services.

ETS alleges that the Cabinet enforces charter bus transportation regulations by Kentucky Revised Statute ("KRS") § 281.637; Louisville Metro enforces charter bus and pre-arranged interstate ground transportation regulations by Louisville Metro Code ("LMC") § 115.240 *et seq.*; and the LRAA enforces charter bus and pre-arranged interstate ground transportation regulations by LRAA Reg. Chapter 700 (Ground Transportation) *et seq.*  ETS specifically alleges that because of its failure to pay a fee and obtain a permit pursuant to LRAA regulations, the company was subjected to escalating fines and ultimately banned from providing ground transportation services at the Airport.  Defendants do not deny that such regulations exist and are enforced against ETS,[2] nor do they deny the resulting sanctions imposed on ETS.

ETS asserts statutory preemption under 49 U.S.C. § 14501, preemption under the Commerce Clause of the U.S. Constitution, *ultra vires* acts, deprivation of rights under Section 2 of the Kentucky Constitution, and deprivation of rights under the Equal Protection Clause of the Fourteenth Amendment.[3]  The LRAA has asserted a counterclaim to enforce the current ban on

---

[2]While the Cabinet does not deny that KRS § 281.637 exists, the Cabinet denies that § 281.637 is enforced against ETS.  The Cabinet admits that it enforces other charter bus transportation regulations, though, as discussed below.

[3]ETS previously asserted claims against the LRAA and Louisville Metro for deprivation of rights under 42 U.S.C. § 1981.  Those claims were dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *Memorandum Opinion* (DN 70) and *Order* (DN 71) dated September 4, 2007.

ETS's operations at the Airport and to collect unpaid fines for ETS's repeated violations of LRAA regulations (DN 72).

Defendants assert that ETS has no viable claim. The Cabinet argues that ETS does not have standing, § 14501 does not preempt the Cabinet's regulation of charter bus services, and the Cabinet has no authority over the other Defendants. Louisville Metro argues that ETS's motion is premature, the discovery period is ongoing,[4] and there is an issue as to whether ETS lacks standing. The LRAA argues that 49 U.S.C. § 14501(a)(1)(C) is unconstitutionally vague, there are factual issues regarding ETS's standing, ETS's claims are barred by prior administrative proceedings, and the LRAA's regulations do not fall within the preemptive scope of § 14501.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent

---

[4]Discovery is no longer ongoing, having concluded on March 15, 2009, by Order of Magistrate Judge Dave Whalin, dated December 9, 2008 (DN 136). While the full details of the discovery dispute in which the parties have engaged do not bear repeating here, the court is compelled to note that following the motion of Louisville Metro to compel discovery on December 19, 2008 (DN 141), and upon the motion of the LRAA for sanctions based on ETS's failure to comply with its discovery obligations on December 29 (DN 142), and pursuant to Fed. R. Civ. P. 37(b)(2)(A), Judge Whalin imposed sanctions on ETS, precluding ETS from seeking to introduce or otherwise rely upon any evidence beyond the scope of ETS's existing discovery responses and supplemental responses. *Order* by Magistrate Judge Dave Whalin, dated February 6, 2009 (DN 148). ETS did not appeal Judge Whalin's Order.

summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The dispute also must be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 248.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

In reviewing a motion for judgment on the pleadings, the standard of review is the same as that for a motion to dismiss made pursuant to Civil Rule 12(b)(6).  A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *Winget* at 581.  But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citation omitted); *Winget* at 581-82.

-4-

It is a "fundamental" constitutional principle that "Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. Const., art. VI, cl. 2, and *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)). That fundamental principle derives from the supremacy of federal law; the Supremacy Clause, art. VI, cl. 2, provides that "the Laws of the United States. . . shall be the supreme Law of the Land[,] . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *Petrey v. City of Toledo*, 246 F.3d 548, 553-54 (6th Cir. 2001), *overruled on other grounds by City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 442 (2002).

Congress can preempt state law expressly, or when it intends to "occupy the field," or to the extent of any direct conflict between federal and state statutes. *Crosby* at 372-73; *Millsaps v. Thompson*, 259 F.3d 535, 537-38 (6th Cir. 2001). Any direct conflict between state and federal statutes is enough to strike down the state law, *id.* at 374, although only to the extent of actual conflict. *Dalton v. Little Rock Family Planning Services*, 516 U.S. 474, 476 (1996).

ETS asserts that 49 U.S.C. § 14501 preempts Defendants' regulation of charter bus and pre-arranged interstate ground transportation services. This is a purely legal question. Issues of fact specific to this case have no bearing on whether the regulations at issue actually, directly conflict with the federal statute. For the purpose of ruling on the parties' limited motions, the court need only look to the relevant texts for the presence or absence of conflict.

However, as a preliminary matter, Defendants argue that ETS lacks standing. "To demonstrate standing a plaintiff must show an actual injury caused by defendant's conduct which can be remedied by a court." *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 682 (6th Cir. 1994) (internal quotation marks and citation omitted). Section 14501 protects federally regulated

motor carriers of passengers from certain aspects of local regulation.  Defendants argue that ETS

is neither federally regulated, nor a "motor carrier," and therefore has no standing.

Section 14501 provides, in relevant part:

**(a) Motor carriers of passengers.**--

**(1) Limitation on State law.**--No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to--

**(A)** scheduling of interstate or intrastate transportation (including discontinuance or reduction in the level of service) provided by a motor carrier of passengers subject to jurisdiction under subchapter I of chapter 135 of this title on an interstate route. . .

**(C)** the authority to provide intrastate or interstate charter bus transportation. . .

**(d) Pre-arranged ground transportation.**--

**(1) In general.**--No State or political subdivision thereof and no interstate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law requiring a license or fee on account of the fact that a motor vehicle is providing pre-arranged ground transportation service if the motor carrier providing such service--

**(A)** meets all applicable registration requirements under chapter 139 for the interstate transportation of passengers;

**(B)** meets all applicable vehicle and intrastate passenger licensing requirements of the State or States in which the motor carrier is domiciled or registered to do business; and

**(C)** is providing such service pursuant to a contract for--

**(i)** transportation by the motor carrier from one State, including intermediate stops, to a destination in another State; or

**(ii)** transportation by the motor carrier from one State, including intermediate stops in another State, to a destination in the original State.

Defendants argue that ETS is not federally regulated – that is, ETS has no federal operating

-6-

authority – because ETS is not registered, as required by 49 U.S.C. § 13901 *et seq.*  ETS does not dispute that its federal certificates have been revoked because the company has allowed its insurance to lapse.  Nor does ETS dispute that § 14501 controls the regulation of its transportation services only if its federal certificates are active.

However, ETS asserts that the company had active federal certificates at the time of its alleged injury.  ETS further asserts that it allowed its insurance to lapse because the company was banned from operating at the Airport (in violation of federal law), and therefore it made no sense to keep the costly insurance.  ETS also asserts that the inactive status of its certificates is temporary, and the certificates can and will be reactivated upon proof of current insurance.

Defendants further argue that ETS has failed to show that the company and the services it actually provides fall within the purview of § 14501.  Defendants argue that ETS's allegation that the company is a "motor carrier" providing "charter bus" and "pre-arranged ground transportation" services is unsupported by evidence.  At the pleading stage of litigation, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim," however at the summary judgment stage "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted).

49 U.S.C.§ 14501(a)(1)(A) protects federally regulated passenger "motor carriers" from local regulation of scheduling on interstate routes.  "The term motor carrier means a person providing motor vehicle transportation for compensation." *49 U.S.C. § 13102(14)* (internal quotation marks omitted).  "Commercial motor vehicle means a self-propelled or towed vehicle used on the highways

in interstate commerce to transport passengers or property, if the vehicle-- (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater; (B) is designed or used to transport more than 8 passengers (including the driver) for compensation. . ." *49 U.S.C. § 31132(1)* (internal quotation marks omitted).

Defendants argue that ETS has failed to show that the company is a motor carrier.  In ETS's supplemental responses to the LRAA's interrogatories, ETS answered that it has provided interstate transportation services "within and between Kentucky, Indiana, and Ohio," and identified three (3) motor vehicles that it owns and/or operates that appear to meet the weight and seating specifications of § 31132(1).[5]  *The LRAA's Motion for Sanctions*, Ex. A, ETS's Supplemental Discovery Responses, Int. Nos. 3, 11.  ETS's answers to interrogatories, being relevant and not otherwise precluded by the Federal Rules of Evidence, suffice to refute Defendants' contention that ETS is not a "motor carrier."  *See Fed. R. Civ. P. 33(C)*.[6]

49 U.S.C.§ 14501(a)(1)(C) protects providers of "charter bus transportation" from local regulation of operating authority.  Defendants argue that ETS has failed to show that it provides "charter bus transportation."  Because federal law does not specifically define "charter bus transportation," the court is unwilling to find that ETS is not a charter bus transportation provider, so as to deprive ETS of standing on that basis, given the paltry but unrefuted evidence in the record

---

[5]The court is willing to infer that ETS has used the three vehicles to provide interstate transportation services"within and between Kentucky, Indiana, and Ohio."

[6]*See also, ETS's Motion for Preliminary Injunction or Temporary Restraining Order*, Ex. 1 with attached affidavit of James H. Simpson (DN 17) (suggesting that ETS is a "motor carrier").

that ETS does provide charter bus transportation.[7]  In ETS's supplemental responses to the LRAA's interrogatories, ETS answered that it is authorized to provide charter bus service.  Supp. Disc. Rsps., Int. No. 12; *see also*, *Motion for PI or TRO*, Ex. 1 with attached email from ETS to Littlefield (providing rate for what appears to be charter bus service).

49 U.S.C.§ 14501(d)(1) protects providers of "pre-arranged ground transportation service" from local licensing and fee requirements.  "The term pre-arranged ground transportation service means transportation for a passenger (or group of passengers) that is arranged in advance (or is operated over a regular route or between specified points) and is provided in a motor vehicle with a seating capacity not exceeding 15 passengers (including the driver)."  *49 U.S.C. § 13102(19)* (internal quotation marks omitted).

Defendants argue that ETS has failed to show that it provides pre-arranged ground transportation service.  However, as above, ETS's answers to interrogatories show that ETS has provided pre-arranged ground transportation in motor vehicles meeting the seating specifications of § 13102(19).  Supp. Disc. Rsps., Int. Nos. 3, 6, 8-9, 11; *see also*, *Motion for PI or TRO*, Ex. 1 with attached email from ETS to Littlefield (providing rate for what appears to be pre-arranged ground transportation service).  ETS has demonstrated that it has standing under § 14501 to maintain its statutory preemption claims.[8]  The court will consider ETS's challenges to each defendant's regulations in turn.

---

[7]The LRAA argues that because federal law does not specifically define "charter bus transportation," 49 U.S.C. § 14501(a)(1)(C) is unconstitutionally vague.

[8]The Simpson Plaintiffs do not have, nor do they claim, standing under § 14501 in their personal capacities.  It is understood that the Simpsons' only interest in the statutory preemption claims that are the subject of this motion stems from their ownership of ETS.

-9-

ETS alleges that the Cabinet regulates charter bus transportation services pursuant to KRS § 281.637, which requires a charter bus certificate, specifies the timing of charter bus transportation contracts, limits the origination and termination points of contracts, prescribes who may be transported, and prohibits any deviation from these requirements.  ETS argues that § 14501(a)(1)(A) and (C) preempt KRS § 281.637.

The Cabinet asserts that while § 281.637 exists on the books, it is not enforced.  The Cabinet argues that ETS cannot show that the company was actually held to the state statute's requirements. The Cabinet further asserts that the only regulation it enforces relating to charter bus services is 601 KAR 1:040, which relates exclusively to safety and insurance.  The Cabinet argues that § 14501 does not preempt 601 KAR 1:040 but rather expressly permits the regulation.  Specifically, the Cabinet points to 49 U.S.C. § 14501(a)(2), which provides:

> **(2) Matters not covered.**--Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle, or the authority of a State to regulate carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

601 KAR 1:040 provides, in relevant part:[9]

> Section 6. Charter Bus Applications. (1) An application for operating authority as a charter bus operator pursuant to KRS 281.637 shall be made on form TC 93-20, "Application for Charter Bus Operating Authority".

> (2) In accordance with KRS 281A.010(8)(d), a charter bus shall be considered to be a commercial motor vehicle as defined by KRS 281A.010(8) except that it shall be designed to transport seventeen (17) or more persons, including the driver.

---

[9]In the current Administrative Register of Kentucky, Volume 35, Number 9, dated March 1, 2009, 601 KAR 1:040 has undergone slight revisions in form.  In substance, however, the portion of the regulation relating to charter bus services remains identical.

(3) Each application shall include a filing fee of twenty-five (25) dollars.

(4) The applicant shall certify knowledge of and compliance with 601 KAR 1:005, Sections 2, 3(b) and 4 and with the provisions of KRS Chapter 281A relating to commercial drivers licenses.

(5) The applicant shall be required to file evidence of insurance as required by KRS 281.655(4).

(6)(a) If an applicant for a charter bus certificate has complied with the provisions of this administrative regulation, the Department of Vehicle Regulation shall issue the carrier a registration receipt authorizing charter bus operations between all points and places in Kentucky.

(b) The carrier shall keep a copy of this receipt in each vehicle operating pursuant to this authority.

601 KAR 1:040 requires certification of commercial drivers licenses, proof of insurance, and a *de minimus* filing fee for operating authority as a charter bus transportation provider. If an applicant satisfies these requirements, then a certificate issues ministerially. 601 KAR 1:040 does not otherwise regulate charter bus transportation providers. To echo the Second Circuit in *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 774 (2nd Cir. 1999), where the court determined that § 14501 did not preempt a New York City towing ordinance, "Most of these requirements are so directly related to safety or financial responsibility and impose so peripheral and incidental an economic burden that no detailed analysis is necessary to conclude that they fall within the § 14501(c)(2)(A) exemptions."[10] Because 601 KAR 1:040 falls within the exemption provided by § 14501(a)(2), it does not conflict with § 14501.

ETS has failed to show that the Cabinet has enforced the requirements of § 281.637 against the company. In fact, ETS admits that "the Cabinet has recognized (in dealing with a different

---

[10]Section 14501(c)(2)(A) is an exemption identical to § 14501(a)(2).

transportation company) that a charter bus no longer must file a tariff, schedules, or economic regulations. . . as federal deregulation of charter buses took place in 1998." *Amended Complaint*, ¶ 23 (internal quotation marks omitted). The court will not consider the constitutionality of a statute that has not been shown to be enforced. *See*, *Poe v. Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961); *Ellis v. Dyson*, 41 U.S. 426, 95 S. Ct. 1691, 44 L. Ed. 2d 274 (1975). The Cabinet's regulation of charter bus services does not conflict with § 14501. Accordingly, ETS's claim against the Cabinet for violation of the Supremacy Clause fails.

Because ETS has failed to produce any evidence that the Cabinet has violated the Commerce Clause, or to establish any basis for liability on the grounds that the Cabinet "has taken no action to preclude the LRAA or [Louisville Metro] from enforcing their unlawful regulations and continues to authorize intrastate charter bus operations," *Am. Cmplt.* at ¶ 23, ETS's remaining claims against the Cabinet also fail. The Cabinet's motion for summary judgment will be granted, and ETS's claims against the Cabinet will be dismissed.

ETS alleges that Louisville Metro regulates charter bus and pre-arranged interstate ground transportation services pursuant to LMC § 115.240 *et seq.*, which requires a license or permit to provide intrastate charter bus services, a license or permit and schedule to provide airport shuttle services, even if those services are prearranged and interstate, and a license or permit to operate prearranged interstate limousine transportation. ETS argues that § 14501(a)(1)(C) preempts § 115.240 *et seq.*'s charter bus provisions, and § 14501(d)(1) preempts § 115.240 *et seq.*'s airport shuttle and limousine provisions. ETS alleges that Louisville Metro's enactment and enforcement of those provisions of § 115.240 *et seq.* constitute *ultra vires* acts. *Am. Cmplt.* at ¶¶ 39-40. Louisville Metro argues that § 14501(d) does not preempt its airport shuttle and limousine

-12-

regulations.[11]

Section 115.240 defines "Charter Bus," "Certificate," "Ground Transportation Service Carrier," and "Limousine."   Section 115.242(A) prohibits ground transportation service carriers from operating within Louisville Metro without a certificate.   Section 115.243 provides the mechanism to apply for a certificate:

> (A)  A notarized application for a certificate shall be filed with the Department upon forms provided by the Department and with payment of a nonrefundable fee of $100 for processing the application and issuing the certificate.  In addition, the application shall include a non-refundable licensing fee of $30 for each vehicle for hire that is part of the application.

> (B)  Every certificate shall expire at 12:00 midnight, January 31st of each year.  A new application and application fee must be filed with the Department by January 15 of each year in order to continue providing a ground transportation service.  An annual license fee of $30 per current vehicle for hire will also be due at this time and at anytime throughout the license year when the certificate holder adds a vehicle for hire to their fleet.

> (C)  An application for a certificate shall at a minimum contain the following information. . .

> (D)  A certificate holder must notify the Department prior to changing any material information contained in the application. . .

ETS argues that § 14501(a)(1)(C) preempts local regulation of charter bus service, § 115.240 *et seq.* constitutes local regulation of charter bus service, therefore § 14501(a)(1)(C) preempts § 115.240 *et seq.*  Notwithstanding the overbreadth of ETS's major premise – it is clear that § 14501(a)(1)(C) does not preempt all local regulation of charter bus service; *see*, § 14501(a)(2) – ETS's conclusion is correct.   In this instance, the federal statute and ordinance "speak for themselves."  Section 14501(a)(1)(C) prohibits local regulation relating to "the authority to provide.

---

[11]Louisville Metro does not address or seek relief as to ETS's claims concerning its regulation of charter bus operations.

. . charter bus transportation."   Section 115.240 *et seq.* requires providers of charter bus transportation to obtain a local Certificate in order to operate a charter bus service.   Section 14501(a)(1)(C) and § 115.240 *et seq.* directly conflict.   Section 14501(a)(1)(C) preempts § 115.240 *et seq.*[12]   Accordingly, § 115.240 *et seq.*'s requirement that charter bus transportation providers obtain a Certificate must be struck down.

ETS proffers the same syllogism that proved § 115.240 *et seq.*'s charter bus provisions unconstitutional to argue that § 14501(d)(1) preempts § 115.240 *et seq.*'s airport shuttle and limousine provisions.   However, § 14501(a)(1)(C) and § 14501(d)(1) are incongruent.   Section 14501 (d)(1) "prohibits States from requiring out-of-state, for-hire vehicles that provide pre-arranged ground transportation service to pay a license or fee."   *Black Car Assistance Corp. v. New Jersey*, 351 F.Supp.2d 284, 287 (D. N.J. 2004).   It is undisputed that ETS is domiciled and registered to do business in Kentucky, therefore § 14501(d)(1) does not preempt § 115.240 *et seq.*, as applied to ETS.   Accordingly, ETS's motion for partial judgment on the pleadings will be granted in part as to Louisville Metro's regulation of charter bus transportation providers.   Louisville Metro's cross-motion will be granted.

ETS alleges that the LRAA regulates charter bus and pre-arranged interstate ground transportation services pursuant to LRAA Reg. Chapter 700 (Ground Transportation) *et seq.*, which requires charter bus and pre-arranged interstate ground transportation operators to obtain a permit

---

[12]Section 115.240 *et seq.* is preempted only if ETS has active federal certificates.   The court will account for this contingency in its order.

and pay a fee[13] in order to do business at the Airport.[14]  ETS argues that § 14501 preempts LRAA Reg. Chapter 700 (Ground Transportation) *et seq.*

The LRAA asserts that § 14501(a)(1)(C) is unconstitutionally vague,[15] there are factual issues as to whether ETS has standing,[16] ETS's claims are barred by prior administrative proceedings, and § 14501 does not preempt the LRAA regulations upon which ETS bases its claims.

LRAA Reg. 701 defines "Charter Bus," "Operator," and "Ground Transportation Services Provider."  *LRAA Reg. 701(A)(4), (19), (21).*  LRAA Regs. 704, 706, and 709 govern charter bus, luxury limousine, and interstate commercial bus operators, respectively.  Subsection (A) of all the aforementioned regulations are uniform, providing:

> *Privilege of Operating From the Airport*.  Only those Operators who hold a valid Operator Permit to provide ground transportation services by [Type of Motor Vehicle] at the Airport shall have the privilege of picking up passengers and baggage at the Airport by [type of motor vehicle].

LRAA Reg. 703 governs airport shuttle operators; LRAA Reg. 703(A) is substantially similar, providing:

> *Privilege of Operating From the Airport*.  Only those Operators who hold a valid *concession from the Authority* to provide ground transportation services by Airport Shuttle at the Airport shall have the privilege of picking up passengers and baggage

---

[13]Rather than requiring a permit and payment of a fee, LRAA Reg. 703(A) requires airport shuttle operators to hold a valid concession from the LRAA to do business at the Airport.

[14]In addition, LRAA Reg. 709(A) requires common carrier bus operators to obtain a schedule approved by the LRAA.

[15]Defendant United States of America (the "United States") has intervened and filed a memorandum in defense of the constitutionality of § 14501(a)(1)(C) (DN 153).  The LRAA has responded (DN 155) and the United States has replied (DN 158).

[16]This point will not be addressed further, as the court has fully discussed it above.

-15-

at the Airport by airport shuttle. *Furthermore, only Operators who hold a valid shuttle concession from the Authority may accept Prearranged Pickups by airport shuttle at the Airport.* (emphasis added merely to highlight distinction).

Subsection (B) of LRAA Regs. 704, 706, and 709 provide the required fee structures "[f]or the privilege of providing ground transportation service by [Type of Motor Vehicle] from the Airport." The required fees materially differ according to the type of service offered by the Operator. Charter Bus Operators must pay "Twenty-Five Dollars ($25.00) per day, payable per Charter Bus, for each day on which one or more of Operator's Charter Buses is contracted to make a trip from the Airport, or One Hundred Dollars ($100.00) per week, or Four Hundred ($400.00) per month. *LRAA Reg. 704(B)*. Luxury Limousine Operators must pay (1) "the Trip Fee[17] for each trip the Luxury Limousine makes from the Airport," and (2) "an annual fee of One Hundred Dollars ($100.00) per Luxury Limousine." *LRAA Reg. 706(B)*. Interstate Commercial Bus Operators must pay One Hundred Dollars ($100.00) per month." *LRAA Reg. 709(B)*.

ETS argues that 49 U.S.C. § 14501(a)(1)(C) preempts LRAA Reg. Chapter 700 *et seq.*'s charter bus provisions, arguing as above with respect to LMC § 115.240 *et seq.*'s charter bus provisions. The LRAA argues that § 14501(a)(1)(C) is unconstitutionally vague because "charter bus transportation" is not defined, therefore rendering the statute unenforceable.

Thus, a supplementary constitutional question is presented. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S. Ct. 1319, 99 L. Ed. 2d 534 (1988). In this case, though,

---

[17]"Trip Fee means a fee of One Dollar and Twenty Five Cents ($1.25). . ." *The LRAA Reg. 701(28)* (internal quotation marks omitted).

there are no independent grounds for disposing of ETS's pending motion, so the court must decide both constitutional questions presented. For the reasons stated above, ETS's standing is not an issue. Nor, contrary to the LRAA's contention, are ETS's preemption claims barred by res judicata for the purposes of the motion at bar. While the LRAA argues that ETS was given the opportunity in prior administrative proceedings to show that federal law preempted the LRAA's ability to ban it from the Airport, "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Califano v. Sanders*, 430 U.S. 99, 109, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977); *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Accordingly, addressing the LRAA's challenge to § 14501(a)(1)(C) is prerequisite to the court reaching ETS's preemption claim predicated on the same.

The United States argues that the LRAA cannot challenge the constitutionality of § 14501(a)(1)(C) based on vagueness because the LRAA cannot invoke the protections of the Fifth Amendment's due process clause while exercising sovereign immunity, and because the vagueness doctrine has no application to preemption analysis. The United States further argues that § 14501(a)(1)(C) is not unconstitutionally vague.

The LRAA does not dispute that it is not entitled to the due process protections of the Fifth Amendment. However, the LRAA disagrees that *the principles of the vagueness doctrine* have no application to preemption analysis. In essence, the LRAA argues that the complete failure by Congress to manifest an intent that is at all discernible in the enactment of a law is unconstitutional. Neither the LRAA nor the United States cite any instance in which the vagueness doctrine is even discussed in connection with preemption law. Each party notes the lack of precedent, though,

-17-

arguing that it supports their respective positions.

While the United States argues that the LRAA cannot make a vagueness claim, it does not dispute that "states and their political subdivisions can challenge federal laws directed at their ability to exercise their sovereign rights and powers. . . when the federal government has exceeded its constitutional authority. . ." *The United States' Reply in Defense of the Constitutionality of 49 U.S.C. § 14501(a)(1)(C)*, pp. 5-6, n.2 (internal quotation marks omitted) (quoting the LRAA's Response to the United States' Memorandum, and citing *F.E.R.C. v. Mississippi*, 456 U.S. 742, 752, 102 S. Ct. 2126, 72 L. Ed. 2d 532 (1982) (addressing State's claim that federal law exceeds congressional power under the Commerce Clause and constitutes an invasion of state sovereignty in violation of the Tenth Amendment)).  Yet, in the context of the constitutionality of a federal preemption provision, the United States regards the vagueness doctrine as a mere "rule of statutory construction," arguing,  "[i]f a court determines Congress did not clearly intend to preempt a particular state law, the court should uphold the state law because Congress did not intend to preempt it; the court should not declare the federal preemption provision unconstitutional." *Id.* at 4, n.1.  However, absent any authority to the contrary, the court finds no reason why states and their political subdivisions could not challenge federal laws prohibiting them from regulating certain activities if the prohibition is so vague as to have questionable validity.  Accordingly, the court will consider the LRAA's vagueness challenge to 49 U.S.C. § 14501 (a)(1)(C) on the merits.

The LRAA argues that 49 U.S.C. § 14501(a)(1)(C) is unconstitutionally vague because federal law does not define "charter bus transportation."  The LRAA does not dispute that in enacting § 14501(a)(1)(C), Congress intended to preempt state laws relating to the authority to provide charter bus transportation.  Rather, the LRAA argues that because the statute does not

-18-

identify what type of motor vehicle and specificity of services "charter bus transportation" refers to, the statute fails to provide fair notice to states, their political subdivisions, and charter bus transportation providers of the standards for enforcement.

A statute is "void for vagueness only if it is so vague that no standard of conduct is specified at all." *Chambers v. Stengel*, 256 F.3d 397, 400 (6th Cir. 2001) (internal quotation marks and citation omitted). Section 14501(a)(1)(C) does not meet this demanding vagueness standard merely because Congress failed to define "charter bus." When Congress fails to define a specific term, a court may presume that Congress intended the term's ordinary meaning to attach. *Rusello v. United States*, 464 U.S. 16, 21, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983). Section 14501(a)(1)(C) prohibits "any" local regulation "relating to" the authority to provide "charter bus transportation." This language reflects Congress's broad objective of deregulating the charter bus industry. There is no indication in the text that the preemptive scope of the statute is contingent on vehicle seating capacities, group travel plans, or the like. That the LRAA uses the same words "charter bus" in its own regulations only belies its contention that the meaning of the term is totally incomprehensible. *See*, *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (noting that a party challenging the constitutionality of a statute on vagueness grounds must show that "the statute is vague as applied to [its] particular case, not merely that the statute could be construed as vague in some hypothetical situation."). Section 14501(a)(1)(C) is not unconstitutionally vague.

The LRAA argues that even if § 14501(a)(1)(C) is constitutional, LRAA Reg. Chapter 700 *et seq.*'s charter bus provisions fall within the safety exemption § 14501(a)(2). However, as the court previously ruled in its memorandum opinion dated September 4, 2007, the main purpose of the LRAA's charter bus regulations is not to provide for safety but to authorize transportation

services.  There must be a stronger showing than mere incidental impact on safety to fall within the safety exception.  *See*, *Automobile Club of N.Y., Inc. v. Dykstra*, 423 F.Supp.2d 279, 285 (S.D.N.Y. 2006).

Contrary to the LRAA's assertion that this holding "effectively requir[es] [the LRAA] to allow any vehicle claiming to be a charter bus. . . to drive onto the Airport, park wherever it pleases, and conduct whatever operations it desires at any time," *The LRAA's Response to ETS's Motion for Partial Judgment on the Pleadings*, p. 24, in actuality it does no such thing.  Section 14501(a)(1)(C) only preempts local regulation of the authority to provide charter bus transportation.  LRAA regulations designed to enable the LRAA to police its property, including LRAA Reg. 703(C), and those other generally applicable operating procedures relating to speed limits and other traffic and parking regulations will be upheld.  LRAA Reg. Chapter 700 *et seq.*'s provisions requiring charter bus operators to obtain a permit and pay a fee in order to do business at the Airport must be struck down.

ETS repeats the same blanket-prohibition-of-local-regulation theory in arguing that § 14501(d)(1) preempts LRAA Reg. Chapter 700 *et seq.*'s pre-arranged interstate ground transportation provisions.  The LRAA argues that its regulations do not require a license or fee *on account of the fact* that a motor vehicle is providing pre-arranged interstate ground transportation service; the LRAA asserts that it indiscriminately requires all ground transportation providers to register and pay the appropriate fees.

Regardless, as discussed above, § 14501(d)(1) is designed to preempt states from imposing additional permitting requirements on foreign providers of pre-arranged interstate ground transportation services.  *Black Car* at 289-90.  ETS is a limited liability corporation organized and

-20-

operating under Kentucky law. ETS's principal place of business is Louisville, Jefferson County, Kentucky. ETS is therefore a domestic, not foreign, corporation. Section 14501(d)(1) does not preempt LRAA Reg. Chapter 700 *et seq.*'s pre-arranged interstate ground transportation provisions, as applied to ETS.

Accordingly, ETS's motion for partial judgment on the pleadings will be granted in part as to the LRAA's regulation of charter bus services. ETS's motion will denied in part as to the LRAA's regulation of airport shuttle and limousine services. ETS has failed to establish that the LRAA has violated the Commerce Clause, deprived ETS of rights secured by Section 2 of the Kentucky Constitution, or deprived ETS of rights secured by the Equal Protection Clause of the Fourteenth Amendment. Those claims fail, and they will be dismissed.

CONCLUSION

Because the court finds there are no genuine issues of material fact and the Cabinet is entitled to summary judgment as a matter of law, the Cabinet's motion for summary judgment will be granted. Because ETS is entitled to partial judgment on the pleadings as a matter of law, ETS's motion for partial judgment on the pleadings will be granted in part and denied in part. Because Louisville Metro is entitled to partial judgment on the pleadings as a matter of law, Louisville Metro's cross-motion will be granted.

A separate order will be entered herein this date in accordance with this opinion.