UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EXECUTIVE TRANSPORTATION SYSTEM LLC, et al.,                PLAINTIFFS

v.                                          CIVIL ACTION NO. 3:06-CV-143-S

LOUISVILLE REGIONAL AIRPORT AUTHORITY, et al.,              DEFENDANTS

**<u>MEMORANDUM OPINION</u>**

This case is now before the Court for consideration of several motions. Defendants Louisville Regional Airport Authority ("the Authority") and Louisville/Jefferson County Metro Government ("Metro") have moved for summary judgment against plaintiff Executive Transportation System LLC ("Executive").[1] The Authority also asks the Court to reconsider certain aspects of its earlier Memorandum Opinion in this case, filed May 18, 2009. For the reasons that follow, the Court will dismiss Executive's case in part for lack of jurisdiction and grant summary judgment for the Authority and Metro as to the remainder of the Complaint. Because those dispositions terminate all federal causes of action, the Court will decline to exercise supplemental jurisdiction over the Authority's counterclaim, which will be dismissed without prejudice. Finally, on reconsideration the Court will vacate a portion of its May 18, 2009 Opinion as moot.

**I.**

Executive provides ground transportation services to individuals and businesses, including transportation to and from the Louisville International Airport. Or rather, it used to do so: Executive was suspended from serving the airport due to its failure to comply with Louisville Metro ordinances

---

[1] Also named as plaintiffs are Executive's owners, James and Janet Simpson. The Simpsons do not appear to have any claims apart from those asserted by Executive, and in any event have made no effort to respond to the defendants' motions in their individual capacities. Consequently the Court will grant summary judgment against the Simpsons without further discussion.

on January 23, 2006; was permanently banned from the airport on July 10, 2006 for its repeated violations of its suspension and the airport's regulations; and was fined $32,000 for continuing to make unauthorized pick-ups of passengers at the airport in July and August 2006 after it had been banned. Executive appealed its suspension and the ban[2] via the available administrative process, but the sanctions were upheld.

In this suit, Executive seeks declaratory and injunctive relief to the effect that the regulations and ordinances put in place by Metro and the Authority burden interstate commerce and are preempted by federal law, and are therefore unenforceable. Additionally, Executive alleges that the Authority has treated it in a manner inconsistent with both Section 2 of the Kentucky Constitution and the Equal Protection Clause of the federal Constitution. The Authority has counterclaimed to collect the fines that it assessed against Executive in 2006, and for a permanent injunction enforcing its ban on Executive serving the airport.

## II.

As an initial matter, the Authority argues that the plaintiffs have fully litigated their claims in the state administrative proceeding, and that they are therefore barred by *res judicata* from asserting them here. We disagree. The primary questions presented in this case all raise federal constitutional issues, which "obviously are unsuited to resolution in administrative hearing procedures[. T]herefore, access to the courts is essential to the decision of such questions." *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

However, the state agency's fact-finding may be entitled to some deference. "[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the

---

[2] Executive did not avail itself of the administrative appeals process with respect to the fines.

parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (*quoting United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966)). In Kentucky, issue preclusion bars re-litigation of state-court fact-finding if four elements are present:

> First, the issue in the second case must be the same as the issue in the first case. Second, the issue must have been actually litigated. Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998). Where a state administrative process resolved a question of fact such that it meets this four-part test, this Court must treat that issue as having been conclusively decided. Much of this case, however, can be decided without reference to any particular event, the questions presented being purely legal in nature.

## III.

The Court will first consider the Authority's motion for summary judgment on Executive's claims against it. A party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a

reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue need not

be resolved conclusively in favor of the non-moving party, but that party is required to present some

significant probative evidence which makes it necessary to resolve the parties' differing versions

of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89

(1968). The evidence must be construed in the light most favorable to the party opposing the

motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

## A.

We are asked to decide whether the regulations erected by Metro and the Authority have

been preempted by federal legislation. Before reaching that question, however, we must determine

whether Executive has standing to raise the preemption issue.

Standing is a critical component of the subject-matter jurisdiction of the federal courts;

without it there is no "Case" or "Controversy" upon which the federal judicial power can act.

Consequently if at any time a court discovers that a party bringing suit lacks standing, the case must

be dismissed for want of jurisdiction. "Without jurisdiction the court cannot proceed at all in any

cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function

remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*,

74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1869) (*quoted in Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210, 227 (1998)). The Court is therefore not

for present purposes bound by its prior finding that Executive had adequately demonstrated standing

for purposes of a motion for judgment on the pleadings (*see* Mem. Op. 9 (May 18, 2009)).

The party invoking federal jurisdiction bears the burden of establishing the elements of

standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

-4-

> Since [the elements of standing] are not mere pleading requirements but rather an
> indispensable part of the plaintiff's case, each element must be supported in the same
> way as any other matter on which the plaintiff bears the burden of proof, i.e., with
> the manner and degree of evidence required at the successive stages of the litigation.
> . . . In response to a summary judgment motion, . . . the plaintiff can no longer rest
> on . . . "mere allegations," but must "set forth" by affidavit or other evidence
> "specific facts," which for purposes of the summary judgment motion will be taken
> to be true.

*Id.* (citations omitted). On summary judgment, proof of standing is subject to the same burden of

proof and standard of review as any other critical fact: Plaintiffs must be able to show at least the

existence of a genuine issue of material fact as to the elements of standing if their claims are to

survive.

The Supreme Court has defined a three-part "irreducible constitutional minimum" for proof

of standing. *Id.* at 560. As the Sixth Circuit has summed up the inquiry, "a plaintiff must show an

actual injury caused by the defendant's conduct which can be remedied by a court." *Washegesic v.

Bloomingdale Pub. Sch.*, 33 F.3d 679, 682 (6th Cir. 1994) (citation and internal quotation marks

omitted.).

Executive asserts that the regulations it challenges have been preempted by three specific

sections of Chapter 49 of the United States Code: §§ 14501(a)(1)(A), 14501(a)(1)(C), and 14501(d).

Each of these sections provides that "No State or political subdivision thereof . . . shall enact or

enforce any law, rule, regulation, standard, or other provision having the force and effect of law

relating to" a particular form of transportation. The "legally protected interest" that Executive seeks

to vindicate here is the right not to be regulated when it engages in activities covered by those

sections of the Code. In order to prove standing, Executive must therefore demonstrate that it does

in fact conduct the sort of business that Congress deregulated by enacting the provisions it invokes,

or (for purposes of its damages claim) that it conducted such business in the past and was injured

by the existence of the regulations. Unless it is or was covered by § 14501, it cannot claim the statute's protection and would thus have suffered no injury that would give rise to standing.

**1.**

The first section we consider, 49 U.S.C. § 14501(a)(1)(A), bars state governments from enacting regulations related to "scheduling of interstate or intrastate transportation (including discontinuance or reduction in the level of service) provided by a motor carrier of passengers subject to jurisdiction under subchapter I of chapter 135 of this title [49 USCS §§ 13501 et seq.] on an interstate route." To be covered by this provision, Executive must show that (1) it is a passenger motor carrier; (2) it is subject to federal jurisdiction; and (3) its vehicles travel on routes that cross state lines.

Federal law provides a specific definition of what it means to be a "motor carrier." As relevant here, a "motor carrier" is a person or entity providing transportation for compensation using a vehicle that either weighs more than 10,000 pounds or is designed or used to carry more than eight passengers, including the driver. *See* 49 U.S.C. §§ 13102(14), 31132(1). Contrary to the Authority's assertion, issue preclusion does not limit us to the administrative record on the question whether Executive qualifies as a motor carrier. That record does not reflect that the weight or capacity of Executive's vehicles was "actually litigated," "actually decided," or "necessary to the court's judgment." *Yeoman*, 983 S.W.2d at 465. Unrebutted evidence submitted to the Court shows that Executive owns eleven vehicles, three of which carry fifteen or more passengers. (Supp. Resp. to the Authority's Int. No. 3.) Those three large vehicles qualify Executive as a "motor carrier."

Moving to the second and third requirements for coverage under § 14501(a)(1)(A): Federal jurisdiction over transportation, for present purposes, attaches when a motor carrier carries

passengers or property between or through different states. (Certain exclusions to this rule exist, but none of them is applicable here.) *See* 49 U.S.C. §§ 13501-13508. We can therefore distill the remainder of the standing inquiry here to two related questions. First, insofar as Executive seeks damages for its "business losses and economic harm" (Req. for Relief ¶ 10), it must show that but for the various regulations it would have provided more interstate transportation (using its nine-passengers-or-more vehicles), and would therefore have turned a bigger profit, than it actually did. Second, in order for this Court to grant declaratory and injunctive relief, the plaintiff must show that if the regulations are lifted it will provide such transportation in the future. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (*quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)). Mere assertion of an "intent" to engage in future behavior is insufficient to prove that a plaintiff will be injured unless complained-of conduct is enjoined. *See id.* Without evidence of concrete plans, mere "'some day' intentions . . . do not support a finding of the 'actual or imminent' injury that our cases require." *Id.*

In order to have standing to sue for damages, Executive must provide evidence of "specific facts," which if true would suffice to show that it is (or was in the past) engaged in the business of interstate transportation, such that local regulation of its activities violated rights that it actually held under 49 U.S.C. § 14501(a)(1)(A). Fed. R. Civ. P. 56(e); *Lujan*, 504 U.S. at 561. So far as the Court can tell, the plaintiff has provided virtually nothing in the way of specific facts tending to prove that its nine-passengers-or-more vehicles have ever engaged in interstate commerce. In answering Metro's fifth interrogatory, Executive stated: "From time to time all listed vehicles have been used

-7-

in interstate commerce." This is not a "specific fact." Nor is the bare claim that Executive has "provided transportation service to individuals and businesses in interstate and intrastate movement within and between Kentucky, Indiana, and Ohio." (Pl.'s Supp. Resp. to the Authority's Int. No. 11.) Plaintiffs have provided no business records, affidavits, or testimony affirming that any of its three large vehicles has ever left the state of Kentucky. The standing determination in the Court's prior opinion rested on the presumption, in the context of a motion for judgment on the pleadings, "that general allegations embrace those specific facts that are necessary to support the claim," *Lujan*, 504 U.S. at 561, and an inference that Executive used its buses to provide interstate transportation services. Neither the presumption nor the inference is warranted at this stage of the game.

The only remaining piece of evidence that Executive has provided that could support a finding that it engaged in high-capacity interstate transportation is the fact that the Federal Motor Carrier Safety Administration (FMCSA), a division of the U.S. Department of Transportation (USDOT), has issued it a USDOT Number. But this proves virtually nothing. Kentucky requires every commercial vehicle registrant to obtain a USDOT number as a necessary condition of registration. *See* 601 KAR 1:005-2 (requiring that commercial motor vehicles comply with, *inter alia*, the regulations contained in 49 C.F.R. 390); 49 C.F.R. § 390.19 (requiring that commercial motor vehicles file biannual forms and be assigned USDOT numbers). *See also* 601 KAR 1:005-3(8)(b) (requiring display of USDOT number); 49 C.F.R. § 390.21 (same). That Executive had a USDOT registration number demonstrates only that it was permitted to operate commercial vehicles within Kentucky; it does not prove that the company ever attempted to engage in interstate transit. It is even further from being specific factual evidence that it had used its three largest vehicles to do

so. Absent such evidence the Court cannot find that Executive has carried its burden of proving standing to seek damages for alleged violations of its rights under 49 U.S.C. § 14501(a)(1)(A).

Similarly, Executive provides nothing in the way of facts to the effect that it would be operating an interstate transportation business now and in the future were it not restrained by the allegedly preempted local ordinances. Though it once had FMCSA authority to operate in interstate commerce (though, again, there is no evidence that this authority was ever actually used), that certification is now lapsed and inactive, and apparently has been for quite some time. The company has no insurance on file with the FMCSA (as is required for continued certification), and has not carried any since February 2005, more than a year before this action was filed. Plaintiff has failed to show the sort of "imminent" injury that *Lujan* requires in a case involving injunctive relief. *See* 504 U.S. at 563-64. Consequently Executive has no standing to challenge either the Authority's regulations or Metro's ordinances under subsection (a)(1)(A).

### 2.

The defense next argues that Executive has no standing under 49 U.S.C. § 14501(a)(1)(C), which prohibits states from regulating "the authority to provide intrastate or interstate charter bus transportation." While the defense argues that this section is unconstitutionally vague due to its failure to define "charter bus transportation," we see no need to address this question. The record does not reveal sufficient facts to establish that Executive has ever provided such services, however the term is defined.[3] The sum total of those facts is, so far as the Court can tell, a statement that Executive is "authorized" to provide such services (Pl.'s Supp. Resp. to the Authority's Int. No. 12), and a truncated e-mail chain between Executive and a client quoting a fee for bus service (Ex. 1 to

---

[3] As above, we do not think the *Yeoman* preclusion test is met here.

Pl.'s Mot. for Prelim. Inj. or TRO (DN 17-2)). The Court previously described this evidence as "paltry," and it has not been supplemented. The fact that Executive is or was authorized to perform certain activity is not a "specific fact" proving that it actually engaged in that activity; still less is it proof that it was or is prevented from engaging in that activity by Metro or Airport Authority regulations. And although the company does appear to have participated in negotiations to provide bus service between Caesar's Hotel and Casino and Churchill Downs, there is no evidence that this effort was thwarted by the challenged regulations. Indeed, the plaintiffs evidently did not think that this service was even threatened, as they sought a restraining order only against enforcement of the Airport Authority's rules (which would not have affected the proposed bus service). In short, Executive has provided no firm evidence that it has ever been damaged by local regulation of charter bus services, or that it ever will suffer such damages in the future. It therefore lacks standing to sue as a provider of charter bus transportation.[4]

### 3.

Plaintiff's final statutory claim for relief comes under 49 U.S.C. § 14501(d), which preempts laws "requiring a license or fee on account of the fact that a motor vehicle is providing pre-arranged ground transportation service if the motor carrier providing such service" meets three requirements: (1) It must be properly registered as a provider of interstate transportation of passengers; (2) it must

---

[4] As an aside, the Court notes that its prior opinion did not declare unconstitutional KRS 281.637 (addressing charter bus transportation). Executive's assertion to the contrary (Resp. to Mot. for Summ. J. at 5) is simply false, and appears to be based on a willful misreading of the opinion. The prior ruling quite clearly read: "[Executive] has failed to show that the Cabinet has enforced the requirements of § 281.637 against the company. . . . The court will not consider the constitutionality of a statute that has not been shown to be enforced. . . . Accordingly, [Executive's] claim against the Cabinet for violation of the Supremacy Clause fails." (Mem. Op. 11-12 (May 18, 2009) (citations omitted).) Defense counsel's flagrant dishonesty is neither appreciated nor helpful to his client's cause. We remind him of Local Rule 83.3 (Attorney discipline) and Ky. Sup. Ct. R. 3.130(3.3) (Candor toward the tribunal).

meet applicable state licensing requirements; and (3) it must be providing pre-arranged transportation services pursuant to a contract for interstate travel. 49 U.S.C. § 14501(d)(1).

As discussed above, Executive's FMCSA operating authority lapsed when its insurance was cancelled almost five years ago. Without insurance and authorization from the Safety Administration, Executive cannot fulfill the requirements of 49 U.S.C. §§ 13906 and 13902(a)(1)(B). The company thus does not now meet the registration requirements of § 14501(d)(1)(A), and has not for quite some time.

Furthermore, plaintiff provides scant evidence that it provides pre-arranged contract transportation, and none that it has ever been injured in the performance of those contracts by the operation of the complained-of regulations. The record has not been substantially expanded since the Court's last opinion, which noted only some generally-worded answers to interrogatories and the above-referenced e-mail correspondence's apparent negotiation of pre-arranged transportation services. None of this provides the specific factual basis that is necessary to prove the jurisdictional injury requirement at the summary judgment stage.

The Court is left to conclude that Executive has no standing to assert its statutory preemption argument against either the Authority or Metro with respect to any of the Code sections it seeks to invoke. Count I of the Complaint will therefore be dismissed for want of subject-matter jurisdiction.

**B.**

Executive's second argument is that the Authority's regulations unconstitutionally burden interstate commerce. "The Commerce Clause has . . . been interpreted . . . not only as an authorization for congressional action, but also, even in the absence of a conflicting federal statute, as a restriction on permissible state regulation." *Hughes v. Oklahoma*, 441 U.S. 322, 325, 99 S. Ct.

1727, 60 L. Ed. 2d 250 (1979); *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 448 (6th Cir. 2009).

Enforcement of this "dormant" aspect of the Commerce Clause is governed by a two-tiered analysis built around the basic idea of balancing state and national interests. First, a protectionist law—one that provides for "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter," *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)—will virtually always be struck down, because the burden on interstate commerce imposed by such a law is extremely unlikely to be outweighed by its local benefits. *Bredesen*, 556. F.3d at 449 (*citing Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986)). If the challenged law is not protectionist in nature, however, it is subject only to the deferential *Pike v. Bruce Church* balancing test. 379 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *C & A Carbone v. Town of Clarkstown*, 511 U.S. 383, 389, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994); *Bredesen*, 556 F.3d at 449. This test holds that a non-protectionist law with a legitimate local purpose is valid "unless the burden it imposes on interstate commerce is 'clearly excessive in relation to the putative local benefits.'" *Bredesen*, 556 F.3d at 450 (*quoting  C & A Carbone,* 511 U.S. at 390).

Executive has not provided any reason to think that the regulations at issue here burden interstate commerce at all. There is no protectionism here: the regulations apply equally to all ground transportation providers operating at the airport, regardless of where the provider's base of operations is located. Moreover, there is not, so far as the Court is aware, a national market for ground transportation to and from the Louisville airport. Although residents of other states may use

the airport on occasion, regulating how they get there simply does not impose any substantial burden on interstate commerce.

Any slight burden on interstate travel imposed by insisting that airport taxi drivers follow a set of rules is outweighed by the salutary effects of having those rules in place: ensuring passenger safety and convenience, efficiency of ground transportation, and so forth. We need not tarry long here; the plaintiffs simply cannot prevail. The Court will grant summary judgment for the Authority.

## C.

Executive's remaining three claims can be lumped together, in that they lack any merit whatsoever. First, plaintiff asserts that the regulations go beyond the scope of the Authority's lawfully delegated power and are therefore *ultra vires* and illegal. They offer in support no case citations or analysis of potentially relevant statutes. Perhaps they mean to concede the point, because KRS 183.133 and KRS 183.885 rather plainly permit airport boards to impose fees and regulate traffic and parking. *See also Dixie Taxi Service, Inc. v. Louisville and Jefferson County Air Bd.* 465 S.W.2d 273 (Ky. 1971). Accordingly, the Court will grant the Authority's motion for summary judgment.

Next, Executive believes that in banning it from the airport, the Authority exercised its power arbitrarily in violation of Section 2 of the Kentucky Constitution. "Unequal enforcement of the law, if it rises to the level of conscious violation of the principle of uniformity, is prohibited by this Section." *Kentucky Milk Marketing & Antimonopoly Com. v. Kroger Co.*, 691 S.W.2d 893, 899 (Ky. 1985). Executive's cause of action rests on its assertion that the Authority treated it and another company, R&R Limousine, differently (in that R&R was not banned for activities allegedly similar to those that led to Executive's ouster) without cause. The factual issues here were in the Court's

-13-

view sufficiently litigated in the state administrative proceedings to be binding here under the *Yeoman* rule: Executive raised the same argument, the issue was actually litigated and decided, and because the Section 2 claim formed the basis of one of Executive's defenses, it was necessary to the judgment. *See Yeoman*, 983 S.W.2d at 465. The administrative determination, which was affirmed on appeal, concluded that "Executive and R&R were not in the same position and were not treated inconsistently." (Authority's Ex. N, Determination 10 (Aug. 9, 2006)). This ruling appears well supported: In upholding the Authority's ban on Executive, the hearing officer noted that Executive has more citations than any other ground transportation company, including R&R; that R&R had a valid defense to some of its citations (in that its activities had in fact been authorized); and that R&R had not been warned (as Executive had) that it would be banned from the airport if its unauthorized activities continued. We agree that there is no unequal or inconsistent treatment of similarly-situated parties here, and certainly nothing "ris[ing] to the level of conscious violation of the principle of uniformity." Executive's state constitutional argument fails.

Finally, citing the fact that its owners are of African descent while R&R's owners are white, Executive claims that the Authority has engaged in racial discrimination in violation of the Equal Protection Clause. For the reasons just stated, the Court concludes that there is no reason to think that the Authority treated Executive and R&R inconsistently at all, let alone that it did so on the basis of race. The Equal Protection Clause "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (*quoting Tigner v. Texas*, 310 U.S. 141, 147 (1940)). There is no suspect classification here, as the two companies were evidently

-14-

treated differently because they were in fact in different positions vis-à-vis the Authority and its regulations. Nor is there any evidence that Executive's fundamental rights were burdened by the Authority's actions. Consequently, the penalty imposed on Executive will be upheld so long as it bears a rational relation to a legitimate end. *See Vacco*, 521 U.S. at 799. In light of Executive's extensive record of flouting airport regulations, the sanctions imposed upon it were rationally related to the goals of providing safe and efficient ground transportation and of raising revenue to sustain the airport's operations. The Equal Protection claim also fails.

*   *   *

For the foregoing reasons, all of Executive's claims against the Authority will be dismissed with prejudice, and summary judgment entered in the Authority's favor.

**IV.**

The Authority also moves for summary judgment on its counterclaims against Executive. It seeks enforcement of the fines levied against the company and a permanent injunction to enforce the ban on its operation at the airport. Both of these prayers for relief are based on the state statutes authorizing the Authority to make and enforce rules regarding ground transportation at the airport. *See* KRS 183.133(3); KRS 183.133(6); KRS 183.885. One of these statutes, KRS 183.133(6)[5], vests original jurisdiction for these kinds of claims in the Kentucky District Courts (that is, the lowest-level state trial courts).

Because we today dismiss all of Executive's federal-law claims, the Authority's state-law enforcement claims are all that remain before us. Exercising pendent jurisdiction over the enforcement claims would, in effect, turn this Court into an arm of the Commonwealth of Kentucky,

---

[5] "Prosecution for a violation of any rule, regulation or ordinance adopted pursuant to this section shall be in the District Court of any county within which the airport is located."

-15-

*vice* the Jefferson County District Court, where violations of the Authority's rules and regulations would normally be prosecuted. Having dispensed with the federal issues, we are inclined to respect Kentucky's scheme for the enforcement of local law, especially in light of the fact that KRS 183.133(6) specifies a particular forum for adjudicating the Authority's claims.

These factors combine to provide ample reason to decline to exercise jurisdiction here. 28 U.S.C. § 1367(c); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). We will therefore dismiss the Authority's claims without prejudice on jurisdictional grounds; it is free to take them up in the appropriate state tribunal.

## V.

Given the rulings rendered above, the only claim in the Authority's motion to reconsider the Court's prior Opinion that warrants discussion is its request that we vacate the holding striking down the Authority's requirement that charter bus operators to obtain a permit and pay a fee in order to do business at the airport. Those regulations, the Authority argues, have changed and no longer impose the same restrictions as the ones we considered in the prior ruling. We agree. Because the rules have changed to allow federally-protected charter buses access to the airport without special licenses or fees, our prior ruling should have no effect on the regulations as they now stand. However, because as discussed above Executive has no standing to challenge the regulations in question, we do not address their validity here. We will therefore vacate as moot that part of the May 18 Opinion declaring the Authority's regulation of charter bus operators to be preempted by federal law.

-16-

\*   \*   \*

A separate Order will be entered in accordance with this Opinion.


**Charles R. Simpson III, Judge**
**United States District Court**

December 30, 2009